Melvin R. SIMPSON, Lawrence P. Barbour, Gloria Pressley, Novelle J. Dickenson, and Rodney Garbiso, Plaintiffs,

v.

CITY OF HAMPTON, VIRGINIA; City Council of Hampton; James L. Eason, Mayor of the city of Hampton; Turner M. Spencer, Vice-mayor of the city of Hampton; Ross A. Kearney, Ruthann N. Kellum, Linda E. McNeely, Joseph Spencer, and Charles A. Wornom, members of the City Council of Hampton; City of Hampton Electoral Board; I. Fletcher Johnson, Solon Paul, and Muriel Wright, members of the city of Hampton Electoral Board; and Margaret Ann Parish, city of Hampton Voting Registrar, Defendants.

Civil Action No. 4:95Ccv83.

United States District Court, E.D. Virginia, Newport News Division.

April 16, 1996.

Oscar Houser Blayton, Hampton, VA, Stephen Barkai Pershing, ACLU Foundation of Virginia, Richmond, VA, J. Gerald Hebert, Alexandria, VA, for plaintiffs.

E. Duncan Getchell, Jr., Norfolk, VA, John William Boland, Dana Johannes Finberg, Richmond, VA, George J. Terwilliger, III, McGuire, Woods, Battle & Boothe, Washington, DC, for defendants.

## OPINION AND ORDER

MORGAN, District Judge.

Pending before the Court is the Plaintiffs' Motion to Compel Discovery. On February 21, 1996 Plaintiff filed this motion and a Brief in Support. On March 6, 1996 Defendants filed their Opposition to Plaintiffs' Motion to Compel. On March 11, 1996 Plaintiffs filed a Reply Brief. A hearing on this motion was held on March 29, 1996 at 11:00 a.m. At the conclusion of the hearing the Court requested delivery of the disputed documents to it for potential in camera examination and took the discovery issue under advisement.

## I.  FACTUAL AND PROCEDURAL HISTORY

Plaintiffs instituted this suit pursuant to sections 2 and 12(d) of the Voting Rights Act of 1965, as amended, 42 U.S.C. §§ 1973 and 1973j. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

Plaintiffs claim that the city of Hampton's councilmanic electoral system violates section 2 of the Voting Rights Act. The Hampton City Council has seven (7) members, including the mayor, all of whom are elected at large. The council members are elected to four (4) year terms with three (3) members elected in one biannual election and three (3) elected in the succeeding election. The mayor is also elected to a four (4) year term. Plaintiffs claim that these at large elections dilute their voting power as minorities. Plaintiffs also claim that the Defendants maintain the present plan with the purpose of discriminating against black voters. Plaintiffs seek a new councilmanic electoral plan that utilizes a ward system.

On December 14, 1994 the city of Hampton appointed the Charter Review Commission to recommend a redistricting plan. The at large plan which is still in effect was adopted approximately fourteen (14) years ago. On May 9, 1995 the Charter Review Commission recommended a 6-2-1 redistricting plan in which six council members were elected from single member districts, two council members were elected from super districts and the mayor was elected at large. Under this plan three (3) of the single member districts and one (1) of the super districts were majority black.

On August 9, 1995 the city council rejected the Charter Review Commission's plan and voted to create a 2-2-3 plan. This plan consists of two (2) wards each having two (2) council members, and three (3) council members, including the mayor, being elected at large. The Hampton City Council adopted this plan on September 13, 1995. In order for the city to be able to implement this new plan the city charter must be amended. Only the Virginia General Assembly can amend the city charter and they did not consider making such a change during their last session. Also, the Department of Justice must preclear the new plan before it can take effect. On October 3, 1995, the city submitted this plan to the Attorney General for advance preclearance. The Attorney General declined to give the plan advanced preclearance on November 14, 1995.

The Plaintiffs claim that the 2-2-3 plan was adopted to protect the incumbents. Under the 2-2-3 plan all of the incumbents could run unopposed by another incumbent by either running for a ward or an at-large seat.

On August 23, 1995 Defendants moved the Court for an enlargement of time to file their

responsive pleading to December 5, 1995 pursuant to Federal Rule of Civil Procedure 6(b)(1). The motion was heard by a magistrate judge. The magistrate judge granted Defendants' motion insofar as he enlarged the time for Defendants to file a responsive pleading to October 19, 1995. Defendants objected to the magistrate judge's order and sought a stay from this order. On October 19, 1995 the Court heard Defendants' objections to the magistrate judge's order and motion to stay the magistrate judge's order. The Court treated the motion as an objection to the magistrate judge's order and affirmed the order insofar as it ordered the responsive pleadings to be filed by October 19, 1995. The Court advised both parties that it would treat Defendants' submissions to the Court as a motion to stay the action. The Court allowed Plaintiffs to respond to Defendants' motion as reconstituted. The Court conducted a hearing on the motion to stay the proceedings on October 24, 1995. The Court denied Defendants' motion to stay.

On October 23, 1995 Defendants filed a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6). On December 1, 1995 the Court conducted a hearing on Defendants' motion to Dismiss, and the Court denied this motion.

On January 4, 1996 Plaintiffs moved the Court to preliminarily enjoin the May, 1996 election under the present at large system and have the Court implement some type of ward system. On February 29, 1996 the Court conducted a hearing on Plaintiff's Motion for a Preliminary Injunction, and the Court denied this motion.

## II. ANALYSIS

Plaintiffs did not receive some of the documents that they requested in Plaintiff's First Request for Production of Documents. Defendants refused to produce certain documents which they claimed were protected by the testimonial legislative privilege. Plaintiffs and Defendants unsuccessfully attempted to settle this dispute. The disputed documents are personal notes and files of the city council members.

In *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), the Supreme Court held that state legislators were immune from suits based upon legislative activity. *Id.* at 376, 71 S.Ct. at 788. The Fourth Circuit Court of Appeals extended this immunity to local legislators in *Roberson v. Mullins*, 29 F.3d 132, 134 (4th Cir.1994). The testimonial legislative privilege is an outgrowth of legislative immunity. *See Schlitz v. Commonwealth of Virginia*, 854 F.2d 43, 45–46 (4th Cir.1988); *2BD Associates v. Queen Anne's County Commissioners*, 896 F.Supp. 528, 532 (D.Md.1995). The Fourth Circuit Court of Appeals recently recognized this testimonial privilege as it related to the motives of city council members in enacting legislation. *Berkley v. Common Council of City of Charleston*, 63 F.3d 295, 303 (4th Cir.1995). There is no dispute that the defendants in the present case were acting in their legislative capacity when they decided upon the electoral plan for the city of Hampton.

Legislative immunity and the closely related testimonial privilege directly impact upon a component of a Voting Rights Act cause of action. One of the grounds of Plaintiff's Complaint is that the Hampton City Council intentionally discriminated against minorities by maintaining the present electoral plan. Legislative intent is one of many factors examined in the totality of circumstances test to determine if there has been a violation of the Voting Rights Act. *Cane v. Worcester County, Maryland*, 35 F.3d 921, 925 (4th Cir.1994).

The Fourth Circuit Court of Appeals resolved a similar conflict in *Burtnick v. McLean*, 76 F.3d 611 (4th Cir.1996). In this case Erwin A. Burtnick ("Burtnick") sued the city of Baltimore and Jacqueline F. McLean ("McLean"), Burtnick's supervisor, under Title VII, the Age Discrimination in Employment Act, and 28 U.S.C. § 1983. Burtnick claimed that he was improperly terminated from his position with the city of Baltimore. The United States District Court for the District of Maryland found that McLean was acting in her legislative capacity as a member of the Board of Estimates of the city of Baltimore when she terminated Burtnick's position. The district court balanced the testimonial legislative privilege with a cause of action claiming that the motive of McLean

and the Board of Estimates was to discriminate against Burtnick. The Fourth Circuit Court of Appeals in commenting upon the privilege stated:

> [L]ocal legislators are entitled to absolute immunity when acting in a legislative capacity. Absolute immunity enables legislators to be free, not only from "the consequences of litigation's results, but also from the burden of defending themselves." The existence of testimonial privilege is the prevailing law in this circuit. We find this privilege still viable. On remand, Burtnick's attempt to establish a prima facie case will have to be accomplished without the testimony of the Board as to their motives in abolishing Burtnick's job and establishing the new job. This privilege may be waived by the Board members.

*Id.* at 613 (citations omitted).

The privilege issue presented in *Burtnick v. McLean* is identical to the issue which is before the Court. In both cases the plaintiffs claim that a local legislator has intentionally discriminated against the plaintiffs in a legislative capacity. In both cases the legislator has claimed that the doctrine of legislative immunity applies and they are therefore entitled to invoke testimonial privilege. Pursuant to the Fourth Circuit Court of Appeals' holding in *Burtnick v. McLean* the Court **DENIES** Plaintiff's Motion to Compel Discovery of the council members' personal notes and files, as they are protected by testimonial legislative privilege. In accord with the Court's observation in *Burtnick* the plaintiffs in the case at bar may undertake to prove the council intended to discriminate, but their undertaking may not include the use of the council's personal notes and files.

The Court notes that the testimonial legislative privilege is a personal one and can be waived by an individual council member. *Burtnick,* 76 F.3d at 613; *Marylanders for Fair Representation v. Schaefer,* 144 F.R.D. 292, 299 (D.Md.1992). Since the Court based its finding upon privilege, it has not conducted an in camera examination of the disputed documents.

### III. CONCLUSION

The Court **DENIES** Plaintiffs' Motion to Compel. The Clerk is **REQUESTED** to mail a copy of this Opinion and Order to counsel for the Plaintiffs and counsel for the Defendants.

It is so **ORDERED.**